JANICE CAGLE                          )
                                      )
                Plaintiff,            )
                                      )        Cause No.:
        v.                            )
                                      )
EQUITABLE LIFE & CASUALTY             )
INSURANCE COMPANY                     )        **JURY TRIAL DEMANDED**
Serve at:                             )        **ON ALL COUNTS**
John Huff                             )
Missouri Director of Insurance        )
301 West High Street, Room 530        )
Jefferson City, MO 65101              )
                                      )
                Defendant.            )

## COMPLAINT

COMES NOW, Plaintiff, Janice Cagle (hereinafter "Plaintiff") by and through counsel, and for her cause of action against the Defendant Equitable Life & Casualty Insurance Company (hereinafter "Defendant") and states to this Honorable Court as follows:

## PARTIES

1.      Plaintiff is now and at all times hereinafter mentioned a resident and citizen of the State of Missouri.

2.      Defendant is a company organized in the State of Utah with it principal place of business located at 3 Triad Center, Suite 200; Salt Lake City, Utah.

3.      Defendant is a foreign insurance company authorized to sell policies of life insurance, long term care policies, and casualty insurance policies in the State of Missouri.

Page 1 of 22

4.     As an insurance company authorized to sell policies within the state of Missouri, the Defendant may be served by and through the Missouri Director of Insurance located at 301 West High Street, Room 530; Jefferson City, Missouri 65101.

## JURISDICTION AND VENUE

5.     Defendant is subject to the jurisdiction of this Court pursuant to 28 U.S.C. § 1332 because this is a civil action between citizens of different states and the matter in controversy exceeds $75,000.00 exclusive of interest and cost.

6.     Defendant is subject to personal jurisdiction of this Court by virtue of the fact that it is an insurance company registered to sell insurance within the State of Missouri did and/or does sell insurance and/or does business in the state of Missouri, has agents and/or offices in the State of Missouri and committed torts in whole or in part in this State against Plaintiff, in this judicial district, as more fully set forth herein.

7.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391. The events that give rise to this claim occurred in the judicial district for the United States District Court for the Western District of Missouri.

## FACTS COMMON TO ALL COUNTS

8.     On or about September 17, 1998, Plaintiff purchased a long term care policy from the Defendant.

9.     At all times relevant as alleged herein, Plaintiff maintained a policy of insurance with Defendant, policy number 3757689 (hereinafter referred to as "The Policy").

10.    The Policy provided Long term care insurance for the Plaintiff.

Case 2:15-cv-04192-NKL   Document 1   Filed 09/11/15   Page 2 of 22

11.     The Policy was issued to Plaintiff on October 12, 1998 and updated with additional daily benefit amount of October 12, 2004.

12.     The Policy states it will pay daily amounts for long term care expenses incurred by the Plaintiff in a daily amount of $80.00 and daily care planner amount of $160.00.

13.     The Policy defines Activities for Daily Living (ADL'S) as follows:

> For the purposes of benefit determination, Activities Daily Living mean:
> 1. **Bathing** – washing yourself by sponge bath in either a tub or shower, including the task of getting into or out of the tub or shower.
> 2. **Continence** – the ability to maintain control of bowel and bladder function; or when unable to maintain control of bowel or bladder function, the ability to perform associated personal hygiene (including caring for a catheter or colostomy bag).
> 3. **Dressing**- putting on and taking off all items of clothing and any necessary braces, fasteners or artificial limbs.
> 4. **Eating** – feeding yourself by getting food into the body from a receptacle (such as a plate, cup or table), or by feeding tube or intravenously.
> 5. **Toileting** – getting to and from the toilet, getting on and off the toilet, and performing associated personal hygiene.
> 6. **Transferring** – moving into or out of a bed, chair or wheelchair.

14.     The Policy identifies conditions in which Plaintiff qualifies for nursing care benefits as follows:

> We will pay you the Eligible Charges you incur, up to your Daily Amount, for each day of your resident inpatient stay in a Nursing Care Facility when:
>
> (a)     Your stay begins while this policy is in force; and
> (b)     You receive personal care services under a plan of care; and
> (c)     Your stay is reasonable and necessary:
>    (1) Because you cannot perform, without the substantial assistance of another person, at least 2 activities of daily living (ADL'S) for 90 days or longer due to your loss of functional capacity; or
>    (2) Because you suffer from a level of disability similar to #1 above, as determined under Internal Revenue Code §7702B(c)(2)(A)(ii); or
>    (3) Due to your severe cognitive impairment.

Case 2:15-cv-04192-NKL   Document 1   Filed 09/11/15   Page 3 of 22

15. The Policy identifies conditions in which Plaintiff qualifies for assisted living benefits as follows:

We will pay you the Eligible Charges you incur, up to your Daily Amount, for each day of your resident inpatient stay in an Assisted Living Facility when:

(a)    Your stay begins while this policy is in force; and
(b)    You receive nursing care services under a plan of care; and
(c)    Your stay is reasonable and necessary:
    (1) Because you cannot perform, without the substantial assistance of another person, at least 2 activities of daily living (ADL'S) for 90 days or longer due to your loss of functional capacity; or
    (2) Because you suffer from a level of disability similar to #1 above, as determined under Internal Revenue Code §7702B(c)(2)(A)(ii); or
    (3) Due to you severe cognitive impairment

16. The Policy defines Care Planner as follows:

"Means a licensed health care practitioner other than a Doctor, such as a registered professional nurse, licensed social worker or other similarly licensed person under Internal Revenue Code §7702B(c)(4), whose profession and training includes experience or expertise in the managing and arranging of such services. This person must be licensed where required, act within the scope of that license and may not be related to you by blood or marriage."

17. The Policy states as follows regarding Care Planner Benefits:

"We will pay you the charges you incur, up to your Care Planner Amount, for services of your Care Planner each Period of Care in conducting and providing to us a written assessment and certification of your eligibility for benefits and providing a Plan of Care for your Nursing Care Facility or Assisted Living Facility services. Your Care Planner Amount is shown on your Policy Schedule."

18. The Policy states as follows regarding Coverage for Organic Brain Disorders:

"This policy provides coverage for organic brain disorders, including Parkinson's disease, senile dementia and Alzheimer's disease."

Page 4 of 22

19.    The Policy defines Severe Cognitive Impairment as follows:

" Means the deterioration or loss of your intellectual or mental capacity, as determined by clinical tests and evidence, resulting in your need for substantial assistance or supervision by another person to properly care for yourself, and to protect you from threats to your health and safety."

20.    The Policy defines Personal Care Services as follows:

"The provision of hands-on service by another person to assist you with Activities of Daily Living."

21.    The Policy states as follows regarding notice of claims:

"Written notice of claim must be given to us within 6 months after a covered loss begins or as soon as possible. No special form is required. The notice can be given to us at our Home Office, at the address shown in the policy, or to our agents. The notice should include your name and the policy number."

22.    The Policy states as follows regarding proof of loss:

"Written Proof of Loss must be given to us within 90 days after we send you the claim forms. If it was not reasonably possible for you to give us proof in the time required, we will not reduce or deny the claim for this reason if the proof is filed as soon as possible."

23.    The Policy states as follows regarding timely payment of claims:

"Benefits payable under this policy will be paid promptly after we receive written Proof of Loss."

24.    On June 19, 2014, Plaintiff was admitted to the assisted living residence at the Lake Stockton Healthcare Facility located at located at 811 Owen Mill Road, Stockton, Missouri 65785.

25.    On June 19, 2014, The Policy was in force between Plaintiff and Defendant.

26.    On June 19, 2014, Plaintiff's admittance to the Lake Stockton Healthcare Facility was for personal care services under a plan of care.

27.    The medical records provided to Defendant on or about November 25, 2014, indicated that Plaintiff was suffering from severe cognitive impairment.

Page 5 of 22

28.     While at the Stockton Healthcare Facility, Plaintiff's condition worsened and the facility determined that Plaintiff could no longer stay in the assisted living portion of the facility.

29.     On September 23, 2014, Plaintiff was transferred from the assisted living portion of the Stockton Healthcare Facility to the skilled nursing section of said facility.

30.     On or about November 25, 2014, Defendant was notified of Plaintiff's admission to the Stockton Healthcare Facility.

31.     Defendant was provided copies of Plaintiff relevant medical records with the notification of Plaintiff's admission to the Stockton Healthcare Facility on or about November 25, 2014.

32.     Defendant was provided documentation showing Plaintiff's payments and charges incurred at the Stockton Healthcare Facility on or about November 25, 2014.

33.     Likewise, on or about November 25, 2014, Defendant was notified of Plaintiff's change in condition and her transfer from assisted living section to the skilled nursing section of the Stockton Healthcare Facility.

34.     Plaintiff's November 25, 2014, correspondence demanded that Defendant agree in writing to make payments pursuant to The Policy on or before 5:00 p.m. on December 26, 2014.

35.     On January 16, 2015, Defendant acknowledged Plaintiff's demand for payment of benefits pursuant to The Policy via e-mail.

36.     Defendant's January 16, 2015, correspondence stated as follows:

> "As you are aware, Ms. Cagle's policy is a Long Term Care policy that will pay benefits if she is receiving substantial assistance with two or more of her Activities of Daily Living or has a Cognitive impairment as defined in her policy. In order to determine this, we need documentation showing the assistance being provided."

Page 6 of 22

"We have faxed a request to the Assisted Living portion of facility for a copy of their Assessment/Care Plan for the time she was a resident to determine eligibility. We have also faxed a request to the Skilled Nursing portion of facility for their assessment called an MDS (Minimum Data Set). As soon as these assessments are received and we can see Ms. Cagle qualifies for her Facility benefits, we will get a Claim Form faxed to them to complete and return so we can get her claims processed as soon as possible."

37.　　Defendant's January 27, 2015, correspondence stated Lake Stockton Healthcare Assisted Living and Nursing Care Services had submitted assessments of Plaintiff and that Defendant had completed a review of those assessments.

38.　　Defendant's January 27, 2015, denial stated that the assessments obtained from the Lake Stockton Healthcare Facility indicated that the only Activity of Daily Living in which Plaintiff needed substantial or hand on assistance was Bathing.

39.　　Thus, Defendant's January 27, 2015, correspondence denied Plaintiff's benefits pursuant to The Policy.

40.　　Furthermore, Defendant's January 27, 2015, correspondence stated as following regarding Plaintiff's claim for benefits under the cognitive impairment provision of The Policy:

"in order to qualify under the "Cognitive Impairment" portion of the policy, she must need substantial assistance or supervision by another person to properly care for herself, and to protect her from threats to her health and safety."

41.　　Defendant's January 27, 2015, correspondence stated if Plaintiff disagreed with the decision and denial of benefits then a request for appeal could be submitted.

42.　　Defendant's January 27, 2015, correspondence stated that any formal request for appeal of the denial of benefits would be brought before Defendant's Claim Committee for an internal review.

43.　　On February 5, 2015, Plaintiff made a formal appeal of Defendant's denial of benefits pursuant to The Policy.

44.     Plaintiff's February 5, 2015, correspondence again identified medical records from Plaintiff's treating physicians on June 11, 2014, which stated "Idiopathic Parkinson disease: her balance has worsened and she needs help with nearly all ADLs from both a physical and thinking standpoint."

45.     Furthermore, Plaintiff's February 5, 2015, correspondence provided Defendant with a medical authorization executed by Plaintiff so that Defendant could obtain copies of Plaintiff's relevant medical records supporting her claim for benefits under The Policy.

46.     On February 9, 2015, in order to supplement Plaintiff's appeal for denial of benefits by the Defendant pursuant to The Policy, Defendant was provided correspondence form the Stockton Healthcare Facility as well as Plaintiff's MDS assessments performed on or about 10/1/14 and 1/2/15.

47.     Likewise, Plaintiff's February 9, 2015, correspondence notified Defendant that any decision denying coverage under The Policy based upon the MDS assessments would not be proper as The Policy total fails to reference and identify MDS assessments. Instead, The Policy states it will provide coverage if "you cannot perform, without the substantial assistance of another person, at least 2 activities of daily living for 90 days or longer due to your loss of functional capacity."

48.     On February 25, 2015, Plaintiff's appeal of Defendant's denial of coverage was discussed at Defendant's Appeal Committee meeting.

49.     On February 26, 2015, Defendant notified Plaintiff in written correspondence as follows:

> "Our Claim Appeal Committee had reviewed your request and we are currently requesting the latest MDS from Lake Stockton Health Care. Upon receipt of this information, we will review and send you a complete written response."

Page 8 of 22

50.     On March 13, 2015, Defendant sent correspondence stating as follows:

"We never received a claim related to this ALF stay nor was there ever an inquiry to our office where we could open an intake file related to the ALF stay at Lake Stockton (until we received your letter dated November 25, 2014 but this was after the ALF stay ended). Since there was no request for an intake of the stay until after the ALF stay terminated and since there was no assessment of your mother's functional and cognitive ability as it relates to the ALF stay, there are no policy benefits available for the assisted living facility stay."

51.     Defendant's March 13, 2015, correspondence went on to state as follows:

"On or about September 23, 2014, your mother was transferred to the nursing home section of Lake Stockton. As a result, the nursing home conducted the CMS-required comprehensive annual Minimum Data Set (MDS) assessment. On January 20, 2015, we received a copy of the MDS conducted by Lake Stockton in evaluating your Mom's condition which assessment took place on October 2, 2014 (the October assessment). As stated in your letter to you dated January 27, 2015, we determined that, based upon the October assessment, Ms. Cagle did qualify for one Activity of Daily Living (ADL) only, Bathing, but didn't have a second ADL nor did she qualify based upon a Severe Cognitive Impairment as defined in the policy (relevant policy pages attached). On page four of the October assessment, Line G0120, Bathing was scored by the facility as a "3) for "self-performance" ("extensive assistance-resident involved in activity, staff provide weight bearing support") and "2) for "support" ("one person physical assist") (see copies of MDS 3. Manual, pp. G-1 and G-23 attached). In reviewing any MDS assessment for purposes of qualifying based upon ADLs, we require a score of "3" and "2" as your Mom had above for Bathing. For a tax-qualified policy, the standard to qualify for benefits is one of "hands-on assistance" with an ADL (see p.5 of the policy attached defining "Personal Care Services"). Based upon you Mom's other ADL scores from the October assessment, she unfortunately did not qualify for another ADL (see in particular p.4 of the October assessment). Many of the other ADL scores from the October assessment were scored as a "1" for "self-performance," which is supervision only by the facility staff but is not the required hands-on assistance standard."

"With regard to your mother qualifying based upon a severe cognitive impairment, Section C of the MDS documents the facility's Brief Interview for Mental Status (BIMS) as your mother's summary score was "12" (see p.2 of the October assessment), which according to the MDS Manual stands for "moderately impaired" only (see p. C-14 of the MDS manual attached). Even a score of 12 on the BIMS, however, is very close to being considered "cognitively intact.""

"We understand that unfortunately, your mother has been diagnosed with Parkinson's disease, depression and non-Alzheimer's dementia. We recognize that possibly quite soon, your Mom will qualify for benefits based upon a functional or cognitive

Page 9 of 22

impairment, however, at this time, we cannot qualify Ms. Cagle for benefits based upon the federally-required MDS assessment. The January 2, 2015 Quarterly assessment conducted by Lake Stockton, a copy of which we received on February 26, 2105 after receiving your February 9th letter, doesn't significantly change the scoring of your Mom's functional ability to qualify for benefits."

"Mr. Cagle, please understand that qualification for benefits under a long term care policy is unlike other health insurance policies in that qualification is based upon a policyowner's functional abilities as documented in an impartial assessment such as the facility's MDS rather than upon her diagnoses. In your letter dated February 9th, you question how we rely on the facility's MDS assessment as nowhere in the policy does it refer to the MDS. However, as set forth in the attached relevant pages from the policy, qualification based upon hand-on assistance with two ADLs or severe cognitive impairment must be documented in a "written assessment and certification" or a policyowner's inability to perform these functions. The MDS is a federally mandated and regulated assessment for all nursing homes who participate in Medicare and Medicaid. It is an impartial and accurate assessment of a policyowner's abilities that meets federal standards for nursing facilities. Assisted living facilities are not required to perform an MDS so in these cases, we use impartial third party contractors to perform an inperson assessment with a written report, much like the MDS.

52.     At the time of Defendant's second denial of benefits on March 13, 2015, Defendant was in possession of Plaintiff's January 2, 2015, MDS assessment performed by Lake Stockton Health Care.

53.     Plaintiff's January 2, 2015, MDS assessment at Lake Stockton Health Care indicated that Plaintiff had scores of two or more for more than two ADLs.

54.     Defendant denied Plaintiff's claims for benefits in their March 13, 2015, correspondence notwithstanding the fact that Plaintiff had met the conditions which were set forth in the correspondence.

55.     In fact, Defendant's March 13, 2015, correspondence specifically stated:

"The January 2, 2015 Quarterly assessment conducted by Lake Stockton, a copy of which we received on February 26, 2105 after receiving your February 9th letter, doesn't significantly change the scoring of your Mom's functional ability to qualify for benefits."

Page 10 of 22

56.     On July 17, 2015, Plaintiff again made a demand for payment of benefits to Defendant pursuant to The Policy.

57.     Plaintiff's July 17, 2015, correspondence to Defendant provided Plaintiff's MDS assessments at Lake Stockton Health Care on or about March 27, 2015 and June 22, 2015.

58.     Both Plaintiff's MDS assessments at Lake Stockton Health Care on or about March 27, 2015 and June 22, 2015, indicated Plaintiff scored two or more in at least two ADLs.

59.     Plaintiff's July 17, 2015, correspondence to Defendant again demanded written confirmation of agreement to pay benefits under The Policy to be accepted in writing prior to 5:00 p.m. on August 21, 2015.

60.     On July 20, 2015, Defendant responded to Plaintiff's demand for benefits and stated that legal counsel would handling the response which would be forthcoming prior to deadline of August 21, 2015.

61.     On August 10, 2015, Plaintiff supplemented the demand for benefits under The Policy with Plaintiff's MDS assessments performed on 1/2/15; 3/27/15; and 6/22/15 along with an affidavit from the custodian of records.

62.     Plaintiff's August 10, 2015, correspondence to the Defendant also contained an affidavit of Mary Higgins with the Lake Stockton Health Care Facility.

63.     Mary Higgins affidavit provided to the Defendant on August 10, 2015, stated in relevant part that: (1) since 9/24/14, Lake Stockton Healthcare Facility has been implementing a nursing plan of care for Plaintiff; (2) that the MDS assessment performed on Plaintiff at Lake Stockton Healthcare Facility on 1/2/15 evaluated Plaintiffs' Activity of Daily Living (ADL); (3) that the MDS assessment performed on Plaintiff at Lake Stockton Healthcare Facility on 1/2/15 indicated

Case 2:15-cv-04192-NKL   Document 1   Filed 09/11/15   Page 11 of 22

that she could not perform without substantial assistance of another person at least two Activity of Daily Living (ADL); (4) that MDS assessments performed on Plaintiff at the Lake Stockton Healthcare Facility on 3/27/15 and 6/22/15 stated that she could not perform without substantial assistance of another person at least two Activity of Daily Living (ADL).

64. On August 14, 2015, Defendant responded to Plaintiff's demand for benefits under The Policy.

65. Defendant's August 14, 2015, correspondence stated:

"I'm pleased to report that based upon the Lake Stockton MDS assessment dated March 27, 2015, included with your July 17 letter, Ms. Cagle qualifies for long term care (LTC) benefits under the policy as of the date of this assessments, March 27th. The reason for this is because, as documented in the facility's quarterly assessments of Ms. Cagle date March 17 and again on June 22nd (your Plaintiff's Exhibits 2 and 3 in the July 17 letter), Ms. Cagle qualifies as needing hands-on assistance of two Activities of Daily Living (ADLs), Dressing and Bathing."

\*\*\*\*\*

"On p.2 of your July 17 letter, you state that Ms. Cagle should qualify for two ADLs as of the facility's January 2, 2015 MDS assessments since the facility determined that Ms. Cagle met a "2" in certain ADL categories. Of those listed in your letter, only Transferring and Bathing are considered ADLs under our policy (see the attachment to my March 13, 2015 letter and p.8 of the policy with the definitions of ADLs). For example, walking in the room, walking in the corridor and personal hygiene are not ADLs that qualify a policyowner for benefits."

66. Furthermore, Defendant's August 14, 2015, correspondence states as follows regarding Plaintiff's claims for payment of $160.00 Care Planner benefits under The Policy:

"Equitable pays the Care Planner benefit to cover the cost of an in-person assessment conducted by an independent health care practitioner at time of claim or at time of re-assessment so that our policyowner is not subject to this cost. The in-person assessment is normally ordered for an assisted living facility stay (or for Home Care benefits which are applicable here) since there is no federally mandated MDS for an ALF stay. In Ms. Cagle's case, we would pay the $160 benefit amount for an in-person assessment during this period of care. Once Ms. Cagle was transferred to the nursing home section of the facility, the Care Planner benefit became unnecessary at this time due to our receipt of the federally required MDS assessment. If Ms. Cagle is transferred back to the ALF, this

benefit would become available to conduct the in-person assessment or any re-assessment."

67.    Defendant's August 14, 2015, correspondence again states that its decision relating to Plaintiff's benefits under The Policy is determined by MDS Manual.

68.    The Policy fails to state in any way that determinations relating to benefits under the policy would use the MDS Manual guidelines.

69.    Plaintiff has complied with all conditions precedent to recover under The Policy benefits.

70.    As of the date of filing this action the Defendant has still not paid any benefits to Plaintiff pursuant to The Policy.

## COUNT I
## BREACH OF CONTRACT

COMES NOW, Plaintiff, Janice Cagle (hereinafter "Plaintiff") by and through counsel, and for Count I of her cause of action against the Defendant Equitable Life & Casualty Insurance Company (hereinafter "Defendant") and incorporates paragraphs 1 through 70 above and states further to this Honorable Court as follows:

71.    At all times alleged herein Defendant and Plaintiff had a contractual agreement in which Plaintiff agreed to pay a premium and Defendant agreed to pay long term care benefits if Plaintiff satisfied the conditions precedent set forth in The Policy.

72.    Plaintiff satisfied the conditions precedent for payment of long term care benefits as set forth in The Policy.

Case 2:15-cv-04192-NKL    Document 1    Filed 09/11/15    Page 13 of 22

73. The Policy is ambiguous as it relates to the conditions precedent and as such pursuant to Missouri law should be construed in favor of coverage and against the Defendant as the drafter.

74. Defendant failed to pay long term care benefits under The Policy.

75. Defendant failed to timely pay long term care benefits under The Policy.

76. Defendant failed to properly evaluate and pay Plaintiff's claims for long term care benefits pursuant to The Policy.

77. Defendant failed to perform their contract obligations to Plaintiff.

78. As a direct and proximate result of Defendant's failure to perform their obligations Plaintiff has incurred expenses and suffered damages.

WHEREFORE, Plaintiff prays judgment against Defendant Equitable Life & Casualty Insurance Company in an amount which is fair and reasonable under the circumstances which are in excess of $75,000.00, for prejudgment interest thereon, for Plaintiff's costs incurred and expended herein, and for such other and further relief deemed appropriate under the circumstances.

## COUNT II
## VEXATIOUS REFUSAL

COMES NOW, Plaintiff, Janice Cagle (hereinafter "Plaintiff") by and through counsel, and for Count II of her cause of action against the Defendant Equitable Life & Casualty Insurance Company and incorporates paragraphs 1 through 70 above and states further to this Honorable Court as follows:

79. Defendant has a responsibility to treat its insureds fairly.

80. Defendant has a responsibility to consider an insured's claim promptly.

Page 14 of 22

81.     Defendant has a responsibility to pay its insureds claims for long term care benefits if it is shown that their insured has satisfied the conditions precedent set forth in The Policy.

82.     Defendant has a responsibility to put its insureds own financial interests ahead of its own.

83.     Defendant has an internal policy to treat its insureds fairly.

84.     Defendant has an internal policy to consider an insured's claim promptly.

85.     Defendant has an internal policy to put its insureds own financial interests ahead of its own.

86.     Defendant has an internal policy to respond to an insured's offer of settlement before said offer of settlement expires.

87.     Defendant has an internal policy which requires timely evaluation of claims made by their insured.

88.     As set forth herein Plaintiff made numerous demands for settlement of her claims for long term care benefits pursuant to The Policy.

89.     As set forth herein Defendant made numerous refusals of Plaintiff's claims for long term care benefits under The Policy.

90.     Defendant's policy is ambiguous as it relates the conditions precedent for benefits pursuant to The Policy.

91.     Defendant knew or should have known of said policies ambiguous language and thus said denial is vexatious and without good cause or excuse.

92.     Defendant has refused on all accounts to pay Plaintiff's requested claim for payment pursuant to The Policy is without good cause or excuse.

93.     Defendant has also failed to extend an offer of payment to Plaintiff which represents the maximum amount at which it has valued Plaintiff's claim.

WHEREFORE, Plaintiff prays judgment against Defendant Equitable Life & Casualty Insurance Company in an amount which is fair and reasonable under the circumstances which are in excess of $75,000.00, for prejudgment interest thereon, for Plaintiff's costs incurred and expended herein, penalty not to exceed twenty percent of the first $1,500.00 of Plaintiff's damages, ten percent of the remainder of such award, interest thereon as provided by RSMo. §§ 375.296 and 375.420 and for an award to Plaintiff of a reasonable sum for attorney's fees, and for such other and further relief deemed appropriate under the circumstances.

## COUNT III
## FRAUD

COMES NOW, Plaintiff, Janice Cagle (hereinafter "Plaintiff") by and through counsel, and for Count III of her cause of action against the Defendant Equitable Life & Casualty Insurance Company (hereinafter "Defendant") and incorporates paragraphs 1 through 70 above and states further to this Honorable Court as follows:

94.     Defendant sold Plaintiff The Policy with the expressed agreement that Defendant would pay long term care benefits to Plaintiff if she was unable to perform two (2) listed Activities for Daily Living of similar level of disability or suffered cognitive impairment.

95.     Defendant made the representations to Plaintiff with the intent that Plaintiff would rely on such representations and purchase The Policy and continue to pay premiums.

96.     Defendant by and through their agents and/or brokers indicated to Plaintiff if she would need skilled nursing care at a qualifying facility with care planner that it would pay double the daily amount listed on The Policy.

Page 16 of 22

97. The Policy does not state that the care planner benefits in The Policy would be temporary or for the only the period time to perform an evaluation as stated by Defendant in denying Plaintiff's claims for said benefits.

98. The Policy is ambiguous as it relates to what conditions need to be met to qualify for long term care benefits, care planner benefits, and conditions needed to qualify for double the daily amount listed in The Policy.

99. Defendant included the Care Planner Amount provisions in The Policy with the intent of inducing individuals such as Plaintiff to purchase long term care insurance.

100. Defendant made The Policy ambiguous with the intent of being able to deny claims by their insured such as Plaintiff.

101. The representations made to Plaintiff where false.

102. Defendant, Defendant's agents and/or Defendant's brokers that The Policy as issued was ambiguous and that the representations relating to payment of benefits was false.

103. Defendant, Defendant's agents and/or Defendant's brokers made statements to Plaintiff regarding benefits which would be paid pursuant to The Policy without knowing whether those representations and/or statements where true or false.

104. The representations was material to the purchase of The Policy by Plaintiff.

105. Plaintiff relied upon the representations of Defendant, Defendant's agents, and/or Defendant's broker in purchasing The Policy and such reliance was reasonable under the circumstances.

106. Plaintiff has suffered economic losses and damages a direct result of the representations made by Defendant, Defendant's agents, and/or Defendant's broker.

107.    Defendant's actions and are willful, wanton, and intentional as such Plaintiff is entitled to punitive damages against Defendant.

108.    Defendant's knew or had information from which Defendant, in the exercise of ordinary care, should have known that such conduct created a high degree of probability of financial injury.

109.    Defendant's actions in denying Plaintiff's claims and selling Plaintiff The Policy in which they never intended to honor showed complete indifference to or conscious disregard for the financial and safety of others.

WHEREFORE, Plaintiff prays judgment against Defendant Equitable Life & Casualty Insurance Company in an amount which is fair and reasonable under the circumstances which are in excess of $75,000.00, for prejudgment interest thereon, aggravated damages, punitive damages, for Plaintiff's costs incurred and expended herein, and for such other and further relief deemed appropriate under the circumstances.

## COUNT V
## NEGLIGENT MISREPRESENTATION

COMES NOW, Plaintiff, Janice Cagle (hereinafter "Plaintiff") by and through counsel, and for Count V of her cause of action against the Defendant Equitable Life & Casualty Insurance Company (hereinafter "Defendant") and incorporates paragraphs 1 through 70 above and states further to this Honorable Court as follows:

110.    Defendant, Defendant's agents, and/or Defendant's broker in the course of their business sell long term care policies of insurance to individuals such as Plaintiff.

Page 18 of 22

111. Defendant, Defendant's agents, and/or Defendant's broker made representations relating to the conditions Plaintiff had to satisfy to qualify for benefits under The Policy sold to Plaintiff.

112. Defendant, Defendant's agents, and/or Defendant's broker made such representations with the intent that Plaintiff would rely on them and purchase The Policy.

113. The representations made by Defendant, Defendant's agents, and/or Defendant's broker was material to the purchase of The Policy.

114. The representations made by Defendant, Defendant's agents, and/or Defendant's broker where false.

115. Defendant, Defendant's agents, and/or Defendant's broker failed to use ordinary care in making such representations to Plaintiff.

116. Plaintiff relied upon the representations made by Defendant, Defendant's agents, and/or Defendant's broker in making the purchase of The Policy and such reliance was reasonable under the circumstances.

117. Plaintiff has suffered economic losses and damages a direct result of the representations made by Defendant, Defendant's agents, and/or Defendant's broker.

118. Defendant's actions and are willful, wanton, and intentional as such Plaintiff is entitled to punitive damages against Defendant.

119. Defendant's knew or had information from which Defendant, in the exercise of ordinary care, should have known that such conduct created a high degree of probability of financial injury.

Page 19 of 22

120.    Defendant's actions in denying Plaintiff's claims and selling Plaintiff The Policy in which they never intended to honor showed complete indifference to or conscious disregard for the financial and safety of others.

WHEREFORE, Plaintiff prays judgment against Defendant Equitable Life & Casualty Insurance Company in an amount which is fair and reasonable under the circumstances which are in excess of $75,000.00, for prejudgment interest thereon, aggravated damages, punitive damages, for Plaintiff's costs incurred and expended herein, and for such other and further relief deemed appropriate under the circumstances.

## COUNT IV
## DECLARATORY JUDMENT

COMES NOW, Plaintiff, Janice Cagle (hereinafter "Plaintiff") by and through counsel, and for Count IV of her cause of action against the Defendant Equitable Life & Casualty Insurance Company (hereinafter "Defendant") and incorporates paragraphs 1 through 70 above and states further to this Honorable Court as follows:

121.    Plaintiff and Defendant have a contractual agreement in which Plaintiff purchased and paid premiums and Defendant agreed to pay benefits if the conditions of The Policy where satisfied.

122.    At all times alleged herein Plaintiff's stay at the Stockton Healthcare Facility the subject policy was in force.

123.    Plaintiff received Nursing Care Services under a plan of care at all times alleged herein.

Page 20 of 22

124.    Plaintiff's stay at the Stockton Healthcare Facility was and is reasonable and necessary because Plaintiff cannot perform, without substantial assistance of another person, at least two (2) of the activities of daily living (ADL's) for 90 days or longer due to Plaintiff's loss of functional capacity.

125.    Plaintiff's stay at the Stockton Healthcare Facility was and is reasonable and necessary because of Plaintiff's sever cognitive impairment.

126.    Defendant has been provide with documentation supporting Plaintiff's claims for benefits pursuant to The Policy.

127.    The Policy is ambiguous as it relates to the conditions precedent and as such pursuant to Missouri law should be construed in favor of coverage and against the Defendant as the drafter.

128.    Consequently, Defendant has a duty to pay Plaintiff benefits pursuant to The Policy.

129.    Plaintiff is entitled to care planner benefits pursuant to the policy in the amount of $180.00 per day.

130.    An actual controversy exists between the Plaintiff and Defendant herein, and this Court is vested with the power to declare the rights and liabilities of the parties herein, and to grant such other relief as may be necessary.

WHEREFORE, Plaintiff prays judgment against Defendant Equitable Life & Casualty Insurance Company in an amount which is fair and reasonable under the circumstances which are in excess of $75,000.00, for prejudgment interest thereon, find and declare the rights and liabilities of the parties hereto, find that Plaintiff has satisfied all the conditions and is entitled to long care benefits under The Policy, find when Plaintiff satisfied all the conditions for payment of benefits pursuant to The Policy, and find the amount of benefits in which Plaintiff is entitled pursuant to The

Policy, for Plaintiff's costs incurred and expended herein, and for such other and further relief deemed appropriate under the circumstances.

Respectfully Submitted,

**THE CAGLE LAW FIRM**

By: /s/ Zane T. Cagle
**ZANE T. CAGLE; MO #53775**
zane@caglellc.com
500 North Broadway, Suite 1605
St. Louis, MO 63102
Phone: (314) 241-1700
Fax: (314) 241-1738
*Attorneys for Plaintiff*